UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFF MAISANO,

       Plaintiff,                      CIVIL ACTION NO. 07-11364

       v.                                DISTRICT JUDGE PAUL D. BORMAN

KEVIN MORGEL,                  MAGISTRATE JUDGE VIRGINIA M. MORGAN

       Defendant.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This is a *pro se* civil rights action filed pursuant to 42 U.S.C § 1983. Plaintiff, an inmate in the custody of the Michigan Department of Corrections (MDOC), alleges that the defendant violated his constitutional rights. The matter comes before the court on Defendant's Motion for Summary Judgment (D/E # 9). For the reasons discussed below, the court recommends that defendant's motion be **GRANTED**, that defendant be granted summary judgment on all of plaintiff's claims, and the case be dismissed with prejudice.

### II. Background

#### A. Complaint

On March 29, 2007, plaintiff, an inmate at the Jackson Cooper Street Correctional Facility at all times relevant to this action, filed a complaint against defendant pursuant to 42 U.S.C. § 1983 (D/E # 1).

**1. Factual Allegations**

On August 17, 2005, plaintiff entered an Intensive Parole Reentry Program. If he completed the program, plaintiff was scheduled to be paroled on December 20, 2005. (Complaint, ¶ 1) At that time, plaintiff possessed an Affidavit of Publishing, a UCC document he had received through the prison mail, that he was studying for legal purposes in an attempt to copyright his name. (Complaint, ¶¶ 1, 10) On September 21, 2005, plaintiff went to the prison library and asked the prison librarian to copy the Affidavit of Publishing (Complaint, ¶ 3), but the librarian instead confiscated it along with some other materials. (Complaint, ¶ 4)

On September 23, 2005, all of plaintiff's property was confiscated and searched. Plaintiff was written up for minor misconduct: possession of contraband. (Complaint, ¶ 5) On September 26, 2003, Correctional Official Rice informed plaintiff that there would be an administrative hearing concerning the alleged misconduct. (Complaint, ¶ 6)

On September 28, 2005, defendant[1] held an administrative hearing concerning the alleged misconduct. (Complaint, ¶ 7) At the hearing, plaintiff told defendant that the Affidavit of Publishing could only be used for copyrighting purposes and that plaintiff had no idea that he had violated any rules by possessing it because no notice had been posted. Plaintiff also told defendant that, if plaintiff had known it was contraband, he would have destroyed it. (Complaint, ¶ 8) Defendant found plaintiff guilty of minor misconduct. (Complaint, ¶ 8)

---

[1]According to his affidavit, at all times relevant to this action, defendant was functioning as the Assistant Resident Unit Supervisor for plaintiff's unit (Exhibit 1 to Defendant's Motion for Summary Judgment, ¶ 3).

Plaintiff appealed the finding of guilt to Assistant Deputy Warden Stephens. (Complaint, ¶ 8) On September 29, 2005, Correctional Official Baldwin informed plaintiff that Stephens was coming to speak with plaintiff, but Baldwin did not inform plaintiff that Stephens would be holding an administrative hearing. (Complaint, ¶ 9) Around 2:00 p.m. on September 29, 2005, defendant, Stephens, Assistant Deputy Warden Dyke, and Rice held a hearing regarding plaintiff. Plaintiff once again tried to explain his situation, but he was not allowed to see the evidence against him. At no point in the hearing did anyone state that the unseen evidence was confidential or a threat to security. (Complaint, ¶¶ 10-11) Subsequently, defendant, Stephens, Dyke and Rice recommended that plaintiff be terminated from the Intensive Parole Reentry Program because of the misconduct. (Complaint, ¶ 11)

Plaintiff was removed from the program. (Complaint, ¶ 11) On October 6, 2005, plaintiff's parole was suspended pending his being seen by the parole board. (Complaint, ¶ 12) On November 1, 2005, the parole board denied plaintiff parole because of plaintiff's termination from the Intensive Parole Reentry Program. (Complaint, ¶ 13)

**2. Legal Claims**

While plaintiff's claims are not entirely clear, it appears that he is alleging two constitutional violations.[2] First, plaintiff alleges that defendant denied plaintiff's right to due process by failing to provide written notice of prohibited conduct or the charges against plaintiff, and by refusing to let see plaintiff see the evidence against him. (Complaint, ¶¶ 11, 14) Second,

---

[2]Plaintiff's complaint also mentions, at one point, "equal protection" but it is clear that plaintiff makes no such claim in his complaint. Nevertheless, defendant addresses equal protection in his motion and the issue will be discussed below.

plaintiff alleges that he had a right to possess the Affidavit of Publishing under the First Amendment to the United States Constitution (Complaint, ¶¶ 15-16), relying on the decision in Kalasho v. Caruso, No. 04-70859, 2006 WL 2810691 (E.D. MI, September 28, 2006)(Hood, J.).

In his claim for relief, plaintiff asserts that defendant's behavior caused plaintiff mental anguish and that plaintiff has suffered from the denial of his right to a fair and impartial hearing, being terminated from the Intensive Parole Reentry Program, and being denied parole. (Complaint, p. 6)

### B. Defendant's Motion for Summary Judgment

On June 29, 2007, defendant filed a motion for summary judgment (D/E # 9). In that motion, defendant argues that the claims against defendant in his official capacity are barred by the immunity granted to the states under the Eleventh Amendment to the United States Constitution. Defendant also argues that the claims against him in his individual capacity are barred by qualified immunity because plaintiff has not demonstrated a violation of clearly established federal law. According to defendant, there was no clear constitutional violation because plaintiff received all the process he was due at the hearing, neither the Michigan parole process nor prison rehabilitation programs implicate due process, and plaintiff's First Amendment claim is barred by the favorable termination requirement given that a reversal would result in plaintiff serving a reduced prison sentence.

On October 9, 2007, plaintiff filed a response to defendant's motion for summary judgment (D/E # 16). In that response, plaintiff argues that his right to due process was violated because no notice was posted in his housing unit that he could not possess the Affidavit of

Publishing and because he was not allowed to see the evidence against him. Plaintiff also argued that defendant's ruling was arbitrary and capricious, and that it violated plaintiff's rights under the First Amendment.

### III. Standard of Review

Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

**IV. Discussion**

    **A. Claims Against Defendant in his Official Capacity**

To the extent defendant is sued in his official capacity, the Eleventh Amendment prohibits plaintiff's claims. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any foreign State. [U.S. Const. amend. XI.]

Courts have construed that language broadly and the Eleventh Amendment generally bars suits in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Skinner v. Govorchin, 463 F.3d 518, 524 (6th Cir. 2006).[3] Moreover, "'[i]t is … well established that even

---

[3]As discussed by the Sixth Circuit in Ernst v. Rising, 427 F.3d 351, 358-359 (6th Cir. 2005), a State's immunity comes with a host of exceptions; the immunity does not attach if the lawsuit is not against the State or an arm of the State, the immunity does not extend to counties and similar municipal corporations, the immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law, the immunity may be abrogated by Congress when exercising its enforcement authority under the Fourteenth Amendment, and the immunity does not apply when the federal government brings the lawsuit. Additionally, a State may elect to waive that immunity through legislation through its conduct in litigation. Ernst, 427 F.3d at 358. None of these exceptions are applicable in this case.

though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment[,]' if the suit is somehow deemed to be against the State." Doe v. Wigginton, 21 F.3d 733, 736 (6th Cir. 1994), quoting Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

"Whether a suit against State officials in their official capacity is deemed to be against the State depends on whether the plaintiff seeks 'retroactive' or 'prospective' relief'." Doe, 21 F.3d at 736. Retroactive relief compensates a plaintiff for a past violation of his legal rights and, while retroactive relief usually takes the form of money damages, that is not necessarily the case. See Cory v. White, 457 U.S. 85, 90 n. 2, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); Doe, 21 F.3d at 736-737. Where an official capacity claim is for retroactive relief, the action is deemed to be against the State whose officers are the nominal defendants. Doe, 21 F.3d at 737.

In this case, plaintiff seeks redress for a past violation of his legal rights and, therefore, the suit is deemed to be against Michigan itself. The State of Michigan, however, has not consented to civil rights suits in federal court. See Johnson v. Dellatifia, 357 F.3d 539, 545 (6th Cir.2004); Abick v. Michigan, 803 F.2d 874, 877 (6th Cir.1986); see also Hill v. Michigan, 62 F. App'x 114, 115 (6th Cir.2003). Defendant is therefore entitled to summary judgment in his favor on plaintiff's claims against him in his official capacity.

**B. Claims Against Defendant in his Individual Capacity**

Defendant argues that he is entitled to summary judgment on the grounds of qualified immunity. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001), quoting

-7-

Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is an immunity from suit and not a mere defense to liability. Saucier, 533 U.S. at 200. As a result, courts have "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. Doe v. Wigginton, 21 F.3d 733, 738 (6th Cir. 1994).

Thus, with regard to §1983 claims, a court required to rule upon the qualified immunity issue must first consider whether the facts alleged show the officer's conduct violated a constitutional right. Saucier, 533 U.S. at 201. If a violation could be shown, the court must then ask whether that constitutional right was clearly established. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." Saucier, 533 U.S. at 201.

**1. Plaintiff's Due Process Claim**

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law. "[T]hose who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005). Accordingly, a procedural due process analysis

addresses two questions. "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State, the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (citations omitted). Put another way, to state a procedural due process claim under § 1983, a plaintiff must demonstrate that he possessed a protected liberty or property interest, and that he was deprived of that interest without due process. See Hahn v. Star Bank, 190 F.3d 708, 716 (6th Cir. 1999), cert. denied, __ U.S. __, 120 S.Ct. 1423 (2000).

A liberty interest may arise from two distinct sources-from the implicit guarantees of the Due Process Clause itself, or as a result of state action. Bazzetta v. McGinnis, 430 F.3d 795, 803 (6th Cir. 2005). With regard to the Due Process Clause itself, protected liberty interests are created if corrections officials impose restraints upon the prisoner which "exceed [the prisoner's] sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). See also Bazzetta, 430 F.3d at 803-804. With regard to state action, a liberty interest arises where the state's regulations impose "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless impose[ ][an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. See also Bazzetta, 430 F.3d at 803.

In evaluating a claimed liberty interest by prison inmates, courts are mindful that imprisonment necessarily "carries with it the circumscription or loss of many significant rights." Hudson v. Palmer, 468 U.S. 517, 524, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The "curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of 'institutional needs and objectives' of prison facilities, chief among which is internal security." Hudson, 468 U.S. at 524 (internal citations omitted). Accordingly, not every "action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause." Sandin, 515 U.S. at 484.

In this case, plaintiff challenges the procedural due process he received while being removed from a parole program. Although plaintiff's due process challenge to the procedures used by the parole board is cognizable under § 1983 pursuant to Wilkinson v. Dotson, 544 U.S. 74, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005), plaintiff failed to state a violation of due process. As discussed above, a plaintiff bringing a § 1983 action for violation of procedural due process must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law, Michael v. Ghee, 498 F.3d 372, 377-378 (6th Cir. 2007). A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. Kentucky Dep't. of Corr. v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). However, the Sixth Circuit has noted that "there is no constitutional or inherent right of a convicted person to be conditionally released [e.g., paroled] before the expiration of a valid sentence." Michael, 498 F.3d at 377-378, quoting Greenholtz v. Inmates of Neb. Penal & Corr.

Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), and there is no federal constitutional right to parole. Gavin v. Wells, 914 F.2d 97, 98 (6th Cir.1990); Sweeton v. Brown, 27 F.3d 1162 (6th Cir.1994).

Additionally, the state of Michigan has not created a liberty interest in parole eligibility, as it has a completely discretionary parole system. In re Parole of Johnson, 235 Mich.App. 21, 596 N.W.2d 202 (1999) (per curiam); Juarez v. Renico, 149 F.Supp.2d 319, 322-323 (E.D. Mich. 2001) (Lawson, J.). "[T]he expectancy of release upon parole is not a constitutionally protected interest where the state holds out 'no more than a mere hope that the benefit will be obtained.'" Wright v. Trammell, 810 F.2d 589, 590 (6th Cir. 1987), quoting Greenholtz, 442 U.S. at 11. Consequently, just as plaintiff does "not have a sufficient liberty interest in his future parole release to be entitled to due process in his parole release proceedings" Sharp v. Leonard, 611 F.2d 136, 137 (6th Cir.1979), he is not entitled to due process in the proceedings removing him from a parole reentry program.

Moreover, prisoners have no constitutional right to rehabilitation, education, or jobs. Rhodes v. Chapman, 452 U.S. 337, 348, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); Canterino v. Wilson, 869 F.2d 948, 952-54 (6th Cir. 1989); Ivey v. Wilson, 832 F.2d 950, 955 (6th Cir. 1987); Argue v. N.G. Hofmeyer, 80 Fed. Appx. 427, 429 (6th Cir. 2003). In Sandin, the Supreme Court mandated that a state creates a liberty interest in avoiding certain prison conditions only where those conditions are an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. "[E]ligibility or

non-eligibility for parole does not affect the manner in which he is confined and, thus, no liberty interest is implicated. Michael, 498 F.3d at 378.

### 2. Plaintiff's First Amendment Claim

#### a. "Favorable Termination Requirement"

Defendant very briefly argues that plaintiff's First Amendment claim is barred by what he calls "the favorable termination requirement" because reversal of the misconduct hearing would result in plaintiff serving a reduced prison sentence. The United States Supreme Court has held that a prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement." Preiser v. Rodriguez, 411 U.S. 475, 489, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); see also Wolff v. McDonnell, 418 U.S. 539, 554, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Heck v. Humphrey, 512 U.S. 477, 481, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); Edwards v. Balisok, 520 U.S. 641, 648, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). Consequently, a § 1983 action is barred when a state prisoner challenges the fact or duration of his confinement, and seeks either "immediate release from prison," or the "shortening" of his term of confinement. Wilkinson v. Dotson, 544 U.S. 74, 79, 125 S.Ct. 1242, 161 L.Ed.2d. 253 (2005); quoting Preiser, 411 U.S. at 482.

Several Supreme Court cases have applied the above law in the context of prison disciplinary hearings. In Preiser, the § 1983 action involved a challenge to prison officials' revocation of good-time credits by means of constitutionally deficient disciplinary proceedings. As relief, plaintiffs sought restoration of good-time credits and, in effect, demanded immediate release or a shorter period of detention. In the Supreme Court's view, such an action attacks "the

very duration of . . . physical confinement," and, therefore, it could not be pursued under § 1983. Preiser, 411 U.S. at 487-488.

In Wolff, like Preiser, state prisoners brought a § 1983 action challenging prison officials' revocation of good-time credits by means of constitutionally deficient disciplinary proceedings. Wolff, 418 U.S. at 553. The Supreme Court held that, while the prisoners could not use § 1983 to obtain restoration of the credits, they could use § 1983 to obtain a declaration ("as a predicate to" their requested damages award) that the disciplinary procedures were invalid. Wolff, 418 U.S. at 555. The prisoners could also seek "by way of ancillary relief[,] an otherwise proper injunction enjoining the prospective enforcement of invalid prison regulations." Wolff, 418 U.S. at 555. In the Supreme Court's view, victory on either of those claims would not necessarily have meant immediate release or a shorter period of incarceration because the prisoners attacked only the "wrong procedures, not ... the wrong result ( i.e., [the denial of] good-time credits)." Heck, 512 U.S. at 483, discussing Wolff.

In Edwards v. Balisok, 520 U.S. 641, the plaintiff sought "a declaration that the procedures employed by state officials [to deprive him of good-time credits] violated due process, . . . damages for use of the unconstitutional procedures, [and] an injunction to prevent future violations." 520 U.S., at 643. Applying Heck, the Supreme Court found that habeas was the sole vehicle for the inmate's constitutional challenge to the extent the plaintiff sought declaratory relief and money damages, because the principal procedural defect complained of, deceit and bias on the part of the decision maker, "would, if established, necessarily imply the invalidity of the deprivation of [Balisok's] good-time credits" Balisok, 520 U.S. at 646, and

would "necessarily imply the invalidity of the punishment imposed." Balisok, 520 U.S. at 648. However, the plaintiff's claim for an injunction barring future unconstitutional procedures was allowed under § 1983 because "[o]rdinarily, a prayer for such prospective relief will not 'necessarily imply' the invalidity of a previous loss of good-time credits." Balisok, 520 U.S. at 648.

Similarly, in Wilkinson, the Supreme Court concluded that the plaintiffs' claims were cognizable under § 1983 where the plaintiffs sought relief that would render invalid the state procedures used to deny parole eligibility and parole suitability. As found by the Court, neither of the plaintiffs in that case sought an injunction ordering his immediate or speedier release into the community, and a favorable judgment would not "necessarily imply the invalidity of [their] conviction[s] or sentence[s]." Wilkinson, 544 U.S. at 82, quoting Heck, 512 U.S. at 487. Success for the first plaintiff did not mean immediate release from confinement or a shorter stay in prison; it meant at most new a parole eligibility review that could, at most, speed consideration of a new parole application. Wilkinson, 544 U.S. at 82. Success for the other plaintiff meant at most a new parole hearing at which parole authorities might, in their discretion, decline to shorten his prison term. Wilkinson, 544 U.S. at 82.

As the above cases show, the Supreme Court has focused on the need to ensure that state prisoners use only habeas corpus, or similar state remedies, when they seek to invalidate the duration of their confinement -either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody. In this case, plaintiff's First Amendment claim seeks to have his prison file

corrected and to be returned to the Intensive Parole Reentry Program. Such relief would not necessarily imply the invalidity of plaintiff's conviction or sentence because, at most, plaintiff would secure reentry into a parole program and the possibility of eventual parole. Therefore, it is not recommended that summary judgment be granted on that basis.

### b. Clearly Established Constitutional Right

Defendant also argues that plaintiff has failed to demonstrate that defendant violated any clearly established constitutional right. As discussed above, a court required to rule upon the qualified immunity issue must consider whether the facts alleged show the officer's conduct violated a constitutional right and if that right was clearly established. Saucier, 533 U.S. at 201. Plaintiff relies on an unreported case, Kalasho v. Caruso, No. 04-70859, 2006 WL 2810691 (E.D. Mich. September 28, 2006) (Hood J.). In that case, Judge Hood rejected a Report and Recommendation from a Magistrate Judge recommending that the defendants' motion for summary judgment be granted as to the plaintiff's legal mail claims.

As noted by defendant, the case cited to by plaintiff was delivered near the time of the administrative decision, but that does not necessarily mean that any constitutional rights discussed in the case were not clearly established because the Kalasho decision merely affirms clearly established law regarding prisoner's right to receive mail:

> The First Amendment protects a prisoner's right to receive mail, "but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives." Sallier v. Brooks, 343 F.3d 868, 873 (6th Cir.2003); Knop v. Johnson, 977 F.2d 996, 1012 (6th Cir.1992). There is heightened concern when prison officials place restrictions on legal mail. Kensu v. Haigh, 87 F.3d 172, 174 (6th Cir.1996). The prisoner's First Amendment right is violated if the restrictions are

implemented in an arbitrary or capricious manner. See <u>Parrish v. Johnson</u>, 800 F.2d 600, 604 (6th Cir.1986). [<u>Kalasho</u>, 2006 WL 2810691 at *1.]

In this case, plaintiff is not clear in either his complaint or his response how defendant violated a right clearly established by the First Amendment. From the language cited above and plaintiff's response to defendant's motion for summary judgment, it seems that plaintiff argues that his clearly established right to receive legal mail was violated when defendant ruled that the Affidavit of Publishing was contraband despite the fact that plaintiff had received it through prison mail. Moreover, prisoners do have clearly established constitutional rights with respect to legal mail. "The right of a prisoner to receive materials of a legal nature, which have impact upon or import with respect to that prisoner's legal rights and/or matters, is a basic right recognized and afforded protection by the courts." <u>Kensu v. Haigh</u>, 87 F.3d 172, 174 (6th Cir.1996). <u>See</u> also <u>Sallier</u> 343 F.3d at 873-874 (holding that when the incoming mail is 'legal mail,' there is a heightened concern with allowing prison officials unfettered discretion to open and read a prisoner's mail because a prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially when the correspondence affects the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts.)[4]

Nevertheless, not all "mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights." <u>Sallier</u>, 343 F.3d at 874. Such mail includes mail

---

[4] In an attempt to accommodate both the prison's needs and the prisoner's rights, courts have approved prison policies that allow prison officials to open "legal mail" and inspect it for contraband in the presence of the prisoner. <u>See</u>, e.g., <u>Wolff v. McDonnell</u>, 418 U.S. 539, 577, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (upholding such a policy against a Sixth Amendment attorney-client privilege claim and a Fourteenth Amendment due process claim based on access to the courts). However, no such policy is currently at issue in this case.

from a legal source having little or nothing to do with protecting a prisoner's access to the courts, access to government entities to address grievances, or a prisoner's relationship with an attorney. Sallier, 343 F.3d at 874. "The determination of whether particular kinds of correspondence qualify for the constitutional protection accorded a prisoner's 'legal mail' is a question of law properly decided by the court, not one of fact that can be submitted to a jury." Sallier, 343 F.3d at 873. If a court only finds certain correspondence to be constitutionally protected legal mail, then it should grant qualified immunity on any claims involving items of correspondence that the defendants could have opened without violating constitutional rights that were clearly established at the time and of which a reasonable person would have known. Sallier, 343 F.3d. at 873. See also Christophel v. Kukulinsky, 61 F.3d 479, 484 (6th Cir.1995).

In this case, the legal mail at issue is a UCC document that plaintiff wished to used to learn how to copyright his name. While that Affidavit of Publishing came from a legal source, it had nothing to do with securing plaintiff's access to the courts; a prisoner's right of access to the courts is limited to direct criminal appeals, habeas corpus applications, and civil rights claims challenging the conditions of confinement. Lewis v. Casey, 518 U.S. 343, 355, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); Thaddeus-X, 175 F.3d at 391. Nor did the Affidavit of Publishing involve securing plaintiff's access to government entities to address grievances or his relationship with an attorney. Therefore, plaintiff's constitutionally protected legal mail rights were not implicated and defendant is entitled to dismissal on the basis of qualified immunity and also to summary judgment.

### c. Equal Protection

At the beginning of his complaint, plaintiff mentions "equal protection" but it is clear that he makes no such claim and, to he extend he does, defendant is entitled to summary judgment. The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. As the Sixth Circuit has explained, "to withstand Fourteenth Amendment scrutiny, statutes that do not interfere with fundamental rights or single out suspect classifications must bear only a rational relationship to a legitimate state interest." Jackson v. Jamrog, 411 F.3d 615, 618 (6th Cir.2005), quoting Richland Bookmart, Inc. v. Nichols, 278 F.3d 570, 574 (6th Cir.2002). "Without question, prisoners are not considered a suspect class for purposes of equal protection litigation." Jackson, 411 F.3d at 619; see also Wilson v. Yaklich, 148 F.3d 596, 604 (6th Cir.1998). In addition, there is no fundamental right to parole under the Constitution. Bd. of Pardons v. Allen, 482 U.S. 369, 373, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987); Jackson, 411 F.3d at 619.

Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, 470 F.3d 286, 298 (6th Cir.2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" Club Italia Soccer & Sports Org., Inc., 470 F.3d at 298, quoting Warren v. City of Athens, 411 F.3d 697, 710 (6th Cir.2005)). The plaintiffs bear the burden of demonstrating that the government lacks a rational basis, and they may satisfy this burden either by negating

"'every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will.'" Club Italia Soccer & Sports Org., Inc., 470 F.3d at 298, quoting Warren, 411 F.3d at 711. The State, conversely, bears no burden of proof; its legislative choice is presumptively valid and "'may be based on rational speculation unsupported by evidence or empirical data.'" Club Italia Soccer & Sports Org., Inc., 470 F.3d at 298, quoting TriHealth, Inc. v. Bd. of Comm'rs, 430 F.3d 783, 790 (6th Cir.2005).

In this case, plaintiff has failed to make any arguments with respect to an equal protection claim and, consequently, he has failed to meet his burden of demonstrating that the government lacked a rational basis for its action. Given plaintiff's failure to meet his burden, there is no genuine issue of material fact and defendant is entitled to summary judgment on plaintiff's equal protection claim, to the extent that plaintiff makes such a claim.

## V. Conclusion

For the reasons discussed above, the court recommends that defendant's motion for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues,

but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan<br>
Virginia M. Morgan<br>
United States Magistrate Judge

Dated: December 17, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on December 17, 2007.

s/Jane Johnson<br>
Case Manager to<br>
Magistrate Judge Virginia M. Morgan